# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

DEMONSIA L. RICKS,       )
                           )
      Plaintiff,       )
                           )
v.                        )    Case No.  2:15-cv-0070-CLS-JEO
                           )
SAMUEL AARON, et al.,     )
                           )
      Defendants.    )

## REPORT AND RECOMMENDATION

The plaintiff has filed a *pro se* complaint seeking monetary damages or injunctive relief pursuant to 42 U.S.C. § 1983 for alleged violations of his civil rights during his incarceration at the Donaldson Correctional Facility in Bessemer, Alabama. (Doc. 1).   Named as defendants in this action are Correctional Officer Samuel Aaron; Correctional Officer Michael Weirich; Warden Cedrick Specks; Institutional Coordinator Cheryl Price; Correctional Captain Jeffery Baldwin; Correctional Officer Rickey Cunningham; Correctional Lieutenant Deaundra L. Johnson; Correctional Officer Thaddeus Smith; Correctional Officer Cameron Jones; Correctional Lieutenant (Retired) John Arthur; (cumulatively, "the Correctional Defendants"); Licensed Practical Nurse Patricia McGrue; Licensed Practical Nurse Cathy Ford; and Corizon, LLC (cumulatively "the Medical Defendants").   The plaintiff seeks compensatory and punitive damages for alleged

excessive force, deliberate indifference to medical needs, and state law assault and battery.  In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation.  *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

## I. Procedural History

On August 18, 2015, the undersigned entered an Order for Special Report directing the Clerk to forward copies of the complaint to each of the named defendants and directing the defendants to file a special report addressing the plaintiff's factual allegations.  (Doc. 16).  The undersigned advised the defendants that the special report could be submitted under oath or accompanied by affidavits and, if appropriate, the court would considered it as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.

On December 30, 2015, the medical defendants filed a special report, supplemented by affidavits and documents from the plaintiff's medical file.  (Doc. 37).  Their special report also included a motion for summary judgment.  On May 5, 2016, the correctional defendants filed a special report, supplemented by affidavits and certain prison documents related to the events made the basis of the plaintiff's claims.  (Doc. 48).  The plaintiff filed an unsworn response to the correctional defendants' special report on June 13, 2016.  (Doc. 52).

On June 21, 2016, the undersigned notified the parties that the court would construe the respective special reports as motions for summary judgment and notified the plaintiff that he had twenty-one (21) days to respond to the motions by filing affidavits or other material.  (Doc. 54).  The undersigned also advised the plaintiff of the consequences of any default or failure to comply with Fed. R. Civ. P. 56.  (*Id.*).  *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).  After at least three extensions of time, the plaintiff submitted an unsworn response to the medical defendants' special report/motion for summary judgment on August 24, 2016.  This matter is now before the court on the defendants' special reports being construed as motions for summary judgment.

## II. Standard of Review

Because the court has construed the defendants' special report as a motion for summary judgment, Fed. R. Civ. P. 56 governs the resolution of the motion. Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party.  *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000).  The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of

genuine issues of material fact and that he is due to prevail as a matter of law.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990).  As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case.  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted].  Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof.  This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532.

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment.  *See Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)).  Additionally, because the plaintiff is *pro se*, the court must construe the complaint more liberally than it would pleadings drafted by lawyers.  *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).  "*Pro se* pleading are held to a less stringent standard than pleadings drafted by attorneys and will,

4

therefore, be liberally construed." *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

## III. Summary Judgment Facts

The following facts are undisputed, or where disputed, are taken in a light most favorable to the plaintiff:

The plaintiff is an inmate at the Donaldson Correctional Facility in Bessemer, Alabama.   On the evening of October 23, 2014, he approached Correctional Officer Weirich at the Southside Shift Office and advised Weirich that he felt like he was having an allergic reaction to medication he had taken earlier in the day. (Doc. 1 at 3; Doc. 48-14 at 2).[1]  Weirich telephoned the Health Care Unit and spoke with the Infirmary Officer, Thaddeus Smith, who advised him that Nurses Patricia McGrue and Cathy Ford had stated the plaintiff would need to sign up for Sick Call. (Doc. 1 at 4; Doc. 48-14 at 2).[2]  Upon being informed of this, the plaintiff told Weirich that he wanted to speak with the Shift Commander "because he was being denied medical treatment for an allergic reaction," but

---

[1] The specific symptoms of this alleged allergic reaction are not provided.  More importantly, although the plaintiff was examined by Nurses McGrue and Ford a short time later, he made no mention of an allergic reaction to either of them. (Doc. 37-1 at 3; Doc. 37-2 at 3).

[2] Nurses McGrue and Ford testify they have no recollection of being contacted regarding the plaintiff's alleged allergic reaction. (Doc. 37-1 at 4; Doc. 37-1 at 3).  Officer Smith states that an unidentified "healthcare unit triage nurse" informed him that the plaintiff must sign up for sick call. (Doc. 48-12 at 2).  Weirich's statement regarding what he was told by Smith is inadmissible hearsay. Fed. R. Evid. 801(c).

Weirich refused the request. (Doc. 1 at 5).[3]  The plaintiff then stated "fuck this," and began walking toward the West Hall door, at which point Weirich stepped in front of him and ordered him to return to his assigned living area. (Doc. 48-14 at 2).  The plaintiff continued to walk forward with clenched fists and attempted to push past Weirich, who then drew his chemical spray. (*Id*.)  As Weirich started to use the chemical spray, the plaintiff ran up the West Hall toward the Shift Office, causing the spray to strike him in the back of the head. (*Id*.)[4]  Weirich then radioed for assistance, and the plaintiff was met by eight or more correctional officers coming toward him in the West Hall. (*Id*.; Doc. 1 at 5).

One of the officers responding to Weirich's call was defendant Deaundra Johnson, who testifies that she observed the plaintiff running up the West Hall away from Officer Weirich. (Doc. 48-10 at 2).  After several of the responding officers gave loud verbal commands for the plaintiff to stop, he was apprehended and handcuffed by Officer Aaron, who then escorted him into the West

---

[3] The plaintiff points out that signing up for sick call would have presented a delay of 48 hours. (Doc. 1 at 5).

[4] On this point the plaintiff and Weirich present slightly differing stories.  Weirich testifies that as he began to disperse the spray, the plaintiff turned and began to run at the same time, causing the spray to strike the back of the plaintiff's head. (Doc. 48-14 at 2).  The plaintiff states in his sworn complaint that he was walking toward the West Side door when Weirich sprayed him all over the back of his head and back. (Doc. 1 at 5).  In any event, the undisputed *material* fact is that that the plaintiff disobeyed Weirich's order to return to his living quarters and instead proceeded toward the Shift Office.

Barbershop. *Id.*; Doc. 48-5 at 2).[5]   Once inside the Barbershop, the Officer Aaron instructed the plaintiff to sit in one of the chairs, at which time the plaintiff became combative and stated "Fuck this, I aint' sitting down with this spray on me." (Doc. 48-5 at 2).[6]   The plaintiff was given another direct order to sit down, but allegedly resisted attempts to place him in the chair. (*Id.*). When the plaintiff "started jerking and pulling away aggressively," Officer Aaron placed him on the floor using a "two-on-one takedown" technique. (*Id.*).   At this point, Aaron states that "all force ceased." (*Id.*).[7]

However, the plaintiff's complaint paints a different picture.  He contends that after forcing him to the floor, Officer Aaron then "dropped onto [his] chest and began hollering and screaming … using racial slurs and foul language." (Doc. 1 at 6).   He states that Aaron then "wrapped his hands around [his] neck while attempting to choke [him] into unconsciousness." (*Id.*).   While this was happening, the plaintiff alleges other officers surrounded them and formed a circle "in an attempt to block out [Aaron's] brutal and vicious assault." (*Id.*).   The plaintiff

---

[5] The plaintiff states that when he observed the other officers coming toward him he voluntarily placed himself against the wall with his hands on his head. (Doc. 1 at 5).  He also alleges he was "struck several times with a baton after he was handcuffed," but cannot identify the officer(s) who committed the act. (*Id.* at 7).

[6] On this point, the plaintiff states he did not "resist or do anything" to Officer Aaron. (Doc. 1 at 7).

[7] Aaron also states that at no time during the incident did he or any other officer strike the plaintiff with a baton. (Doc. 48-5 at 2).

names Correctional Officers Cunningham, Smith, and Jones, as being present when these events were taking place. (*Id*. at 7).[8]  He also alleges in vague fashion that Lieutenant Arthur and Sgt. Johnson, "witnessed and heard" Aaron's alleged assault, but makes no claim that they took part in the attempt to hide the events taking place. (*Id*.).[9]  In fact, the plaintiff states that Aaron's assault "seemed like an eternity" until Arthur and Johnson intervened and ordered the officers to leave the barbershop. (*Id*. at 6).

Following these events, the plaintiff was escorted to the Health Care Unit where he was examined by Nurses McGrue and Ford. (Doc. 37-1 at 3; Doc. 37-2 at 3).  At that time, the plaintiff informed the Nurses that he had been sprayed with pepper spray, and he was placed in the shower to remove any residue. (*Id*.).  Nurse McGrue states that although the plaintiff "voiced general complaints of pain,"

---

[8] Officer Rickey Cunningham testifies that by the time he responded to the "code red," the plaintiff was already being escorted up the West Hallway. (Doc. 48-8 at 2).  He states that "[a]t no time did I see any Officer using force on Inmate Ricks." (*Id*.).  However, Cunningham does not *directly* address the plaintiff's allegation that he stood in a circle with fellow officers in order to block others from witnessing Aaron's alleged assault in the barbershop.  Likewise, Officer Thaddeus Smith's affidavit makes no reference to the plaintiff's allegations in that regard. (Doc. 48-12).  Officer Cameron Jones testifies that "nothing in the [plaintiff's complaint] sounds familiar to [him]" and states that he was "not present in the barbershop when [the plaintiff] alleges these events occurred." (Doc. 48-9).  However, for purposes of summary judgment, these affidavits are not sufficient to demonstrate a lack of genuine issue of fact with regard to the plaintiff's claims that these officers witnessed and failed to prevent Aaron's alleged assault.

[9] Lieutenant Arthur testifies that he does not "independently recall the incident" involving the plaintiff and that he remembers "little or nothing about the events apart from [the incident reports]." (Doc. 48-6).  However, despite this acknowledgment, he proceeds to "dispute … the allegation in the complaint that [he] witnessed any use of excessive or unnecessary force." (*Id*. at 2).

those complaints "appeared to be solely related to being sprayed with pepper spray," and her physical exam of the plaintiff failed to reveal "any visible marks or bruises." (Doc. 37-1 at 3).[10]  Nurse Ford testifies the plaintiff was in no significant distress when he was brought into the Health Care Unit, and both Ford and McGrue confirm that the plaintiff made no complaints about any type of allergic reaction at that time. *Id*., Doc. 37-2 at 3.[11]

The following morning, the plaintiff was called to a meeting with Captain Baldwin and Warden Specks to discuss the previous day's events. (Doc. 1 at 7-8; Doc. 48-7; Doc. 48-13).  He contends that during this meeting he was advised by Baldwin and Specks that they would "handle" or "take care of" the disciplinary action initiated by Officer Weirich for failure to obey a direct order. (Doc. 1 at 8). Specks testifies that he did in fact look into the matter and determined that Office Weirich would be disciplined for use of a chemical agent "contrary to his training." (Doc. 48-13).  However, Warden Specks also determined that the plaintiff should also receive a disciplinary charge for failing to obey a direct order. (*Id*.).  Captain

---

[10] The plaintiff alleges the body chart prepared by the medical staff on that occasion "noted [he] had a bruised back and sore hands and had redness around [his] neck and throat area." (Doc. 1 at 6-7).  However, the actual body chart does not support this assertion. (Doc. 37-3 at 49).

[11] Nurse McGrue acknowledges the plaintiff made comments about bumps on his stomach and upper left leg, but states "[the plaintiff] confirmed that the medical staff had assessed those bumps earlier in the morning of October 23, 2014, and began medication." (Doc. 37-1 at 3). According to Nurse McGrue, there was no indication the plaintiff's condition "had changed in any way since the prior evaluation earlier that day." (*Id*.)

9

Baldwin concurs that Weirich's use of force was warranted, but also concurs that the way Weirich utilized the chemical spray was "inappropriate." (Doc. 48-7 at 2).[12]

On November 1, 2014, the plaintiff was taken before the disciplinary court to answer the charge asserted by Office Weirich. (Doc. 1 at 8; Doc. 48-4 at 6).  He contends that he "had not prepared any statement nor written questions for the arresting Officer due to the word and promises of defendants Speck and Baldwin … that they would take care of the disciplinary." (Doc 1 at 8).  He states this left him "at the mercy of the Disciplinary Hearing Officer," resulting in a due process violation. (*Id*. at 8 and 10-11).

## IV. Analysis

### Deliberate Indifference:

Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only when those needs are "serious" and only when the response to those needs is so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Hill v. Dekalb Regional Youth Detention Center*, 40 F. 3d 1176 (11th Cir. 1994); *Harris v.*

---

[12] Captain Baldwin also concluded that Officer Aaron's use of force in the barbershop was not excessive. (Doc. 48-7 at 2).

*Thigpen*, 941 F.2d 1495 (11th Cir. 1991).  A "serious" medical need has been

defined as "one that has either been diagnosed by a physician as mandating

medical treatment or one that is so obvious that even a lay person would recognize

the need for a doctor's attention." *Hill*, 40 F.3d at 1187 (quoting *Laaman v.*

*Helgemoe*, 437 F. Supp. 269, 311 (D.N.H. 1977).  Additionally, the "seriousness"

of an inmate's medical needs may also be gauged by examining the *effect* of delay

in treatment.  *Hill*, 40 F. 3d at 1188.  Thus, "[a]n inmate who complains that delay

in medical treatment rose to a constitutional violation must place verifying medical

evidence in the record to establish the detrimental effect of delay in medical

treatment to succeed." *Id*.

    In the summary judgment context, once the moving party has established a

prima facie entitlement to judgment, the non-moving party generally may not rely

on his pleadings alone but must come forth with evidence supporting the essential

elements of his claim. *Celotex Corp.*, *supra*.  In this instance, not only is the record

devoid of any description of the actual physical symptoms being experienced by

the plaintiff,[13] but the defendants have established that the plaintiff was seen by

---

[13] In his unsworn response to the medical defendants' special report, the plaintiff states that he "was in pain and skin had broken out and areas of his body was (sic) swollen from the medical medication reaction." (Doc. 63 at 8).  However, this statement is not only unsworn, but fails to demonstrate the plaintiff was in need of immediate emergency attention.  It is undisputed that the defendants agreed to see the plaintiff through regular "sick call" channels, and there is nothing before the court that demonstrates he was in need of emergency care.  This is made apparent by the fact that he failed to make mention of his alleged allergic reaction when he got the chance to see medical personnel that evening.

11

medical personnel very shortly after he had complained to Officer Weirich about an allergic reaction to medications, and that during that examination the plaintiff made no mention of the issue to medical personnel.[14]  The undisputed fact that the plaintiff failed to even mention an allergic reaction when he was taken to the infirmary following the barbershop incident belies any inference that he was suffering from a "serious" medical need at the time.[15]

The plaintiff's failure to establish a genuine factual issue with regard to the objective element of his Eighth Amendment claim is further bolstered by the fact that there is nothing in the record which demonstrates he suffered any tangible injury from the alleged delay or failure to treat. The Eleventh Circuit has consistently held that a serious medical need is one that "poses a substantial risk of serious harm if left unattended." *Ciccone v. Sapp*, 238 F. App'x 487, 488 (11th Cir. 2007) (citing *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)).   In this instance, the defendants have submitted affidavits which indicate the plaintiff was suffering no serious issues at the time he was seen in the infirmary, and the

---

[14] Absent some description of the plaintiff's symptoms beyond the naked assertion that he was having an "allergic reaction," the court is not in a position to draw the inference that the plaintiff suffered from a condition "so obvious that even a lay person would recognize the need for a doctor's attention." *Hill*, 40 F.3d at 1187.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -but has not shown - that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. at 679 (internal quotations omitted).

[15] Even the plaintiff's description of what was contained within the "body chart" document fails to mention any symptoms of an allergic reaction. (Doc. 1 at 6-7).

plaintiff points to nothing in the medical record which shows he complained of any lingering effects from the alleged allergic reaction.[16] Therefore, from the undisputed facts before the court, no reasonable jury could conclude that the plaintiff suffered from an objectively serious medical need at the time Nurses McGrue and Ford were allegedly contacted by Officer Weirich.  Having failed to create a genuine issue of fact with regard to a critical element of his Eighth Amendment claim, the medical defendants are entitled to summary judgment.[17]

**Excessive Force:**

Maintaining institutional security and preserving internal order and discipline are essential goals of a prison administration and may require limitation or retraction of the constitutional rights of prisoners.  *Bell v. Wolfish*, 441 U.S. 520 (1979).  Prison officials must therefore be free to take appropriate action to insure the safety of inmates and staff, and the courts will not normally second-guess those officials on matters involving internal security.  *Wilson v. Blankenship*, 163 F.3d

---

[16] In fact, the plaintiff submitted a Sick Call Request on October 24, 2014, complaining of pain in his lower back, and made no mention of any allergic reaction in that document. (Doc. 37-3 at 50).

[17] Even if the plaintiff had established a genuine issue with regard to the individual medical defendants, that alone would not support a claim against the corporate defendant, Corizon. While a corporation providing prison medical services may be liable under § 1983 if it is established that the constitutional violation was the result of the corporation's policy or custom (*see Buckner v. Toro,* 116 F.3d 450 (11th Cir. 1997); *Ort v. Pinchback*, 786 F.2d 1105, 1107 (11th Cir. 1986)), such a corporation may not be held liable under § 1983 on the basis of *respondeat superior* (*see Harvey v. Harvey*, 949 F.2d 1127, 1129-30 (11th Cir. 1992)*; Monell v. Department of Social Services*, 436 U.S. 658 (1978)).

1284 (11th Cir. 1998).  When disciplinary action is taken by a prison official to prevent a security threat or to restore official control, the court's Eighth Amendment inquiry focuses on whether force was applied in a good faith effort to maintain or restore discipline or was undertaken maliciously or sadistically to cause harm.  *Sims v. Mashburn*, 25 F.3d 980 (11th Cir. 1994).[18]  In addition to the extent of injury suffered by an inmate, the factors to be examined in determining whether the use of force was wanton and unnecessary include an evaluation of the following: (1) the need for the application of the force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, and (4) any efforts made to temper the severity of the response.  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  Applying these principals to the allegations made by the plaintiff in his complaint, it is clear that no genuine issues of *material* fact exist with regard to his claims against Officer Weirich and that Officer Weirich is entitled to judgment as a matter of law.

With respect to need for the application of force on the occasion in question, Officer Weirich testifies without refute that the plaintiff disobeyed a direct order to return to his living quarters and was proceeding towards the West Hall without authorization.  Although there is some dispute with regard to the sequence of

---

[18] The Eleventh Circuit has explained that this "heightened specific-intent requirement" is not met merely by showing that, in retrospect, the degree of force applied "was unreasonable and hence unnecessary in the strict sense." *Campbell v. Sykes*, 169 F.3d 1353, 1374 (11th Cir. 1999) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

events that occurred immediately prior to the plaintiff being maced, there is no *material* variation between the plaintiff's version of events as presented in his complaint and Weirich's testimony with respect to the issue of whether or not there was a need for physical intervention. As stated above, our courts have long held that prison officials must be free to take appropriate measures to ensure the safety of inmates and staff. *Wilson*, *supra*. This clearly would include intervention by guards when inmates refuse to obey a direct order. In the dangerous prison setting, even verbal confrontations between prisoners and guards can present a security and safety issue, and our courts recognize that "guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." *Fennell v. Gilstrap*, 559 F.3d 1212, 1218 (11th Cir. 2009).[19] Therefore, "our precedent permits the use of force even when a [prisoner] is not physically resisting." *Id*. Accordingly, when immediate action is warranted, neither the Eighth nor Fourteenth Amendments are violated when force is applied

---

[19] In dealing with excessive force issues, our courts have recognized that prisons are harsh places that present the "ever-present potential for violent confrontation and conflagration." *Whitley*, 475 U.S. at 321 (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 132 (1977)). In the face of these conditions, prison officials are charged with the "unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennen*, 511 U.S. 825, 845 (1994). Therefore, in recognition of the hard choices faced by prison officials in the day-to-day operation of penal institutions, our courts are obliged to apply an "appropriate hesitancy" in second guessing those officials who are quite often faced with decisions that are, of necessity, made "in haste, under pressure and frequently without the luxury of a second chance." *Whitley*, 475 U.S. at 321.

in a good faith effort to restore order. *Ort v. White*, 813 F.2d 318, 323 (11th Cir. 1987).

The second factor to consider in determining if a prison guard's use of force violates the Constitution is the relationship between the need and the amount of force used.  In this instance, there is testimony from Warden Specks and Captain Baldwin which indicates Officer Weirich "administered the chemical agent improperly" and in a manner "not within his training guidelines."  (Doc. 48-13 at 2; Doc. 48-7 at 2).  However, this court must give "wide ranging" deference to the judgment of prison officials in their response to an actual confrontation between inmates. *Whitley*, 475 U.S. at 322.   As stated by the Supreme Court in *Whitley*,

> "The infliction of pain in the course of a prison security measure does not amount to cruel and unusual punishment simply because it may appear *in retrospect* that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense."

475 U.S. at 319 (emphasis added).   Therefore, where there is no evidence that an action was taken in bad faith or without a legitimate purpose, "neither judge nor jury should freely substitute their judgment for that of officials who have made a considered choice."  *Id*. at 322.   Although the manner in which the defendant used the chemical spray may have violated his technical training or ADOC procedures, there is no evidence that his response was particularly excessive or harmful. Where the defendant's use of force is simply "part and parcel of a good-faith effort

16

to restore prison security," there is no Eighth Amendment violation. *Id*. at 326. [20]

Here, the plaintiff has failed to present evidence which "goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives." *Id*. at 322. Without more, his claims cannot proceed past summary judgment.

The third factor to be examined in an excessive force claim is whether or not a responsible official would have reasonably perceived a threat under the circumstances. In this regard, Officer Weirich has presented unrefuted testimony that the plaintiff became angry, refused a direct order to return to his living quarters, and proceeding to enter another part of the prison for which he had no authorization. As noted earlier, prisons are dangerous places and security of the institution is a paramount concern. Accordingly, it seems clear that a reasonable officer would have perceived a security threat under the circumstances.

The final *Hudson* factor examines the defendant's efforts to temper the severity of the response. In this instance, Officer Weirich's testimony is that he stepped in front of the plaintiff and ordered him to return to his living quarters. It was only after the plaintiff ignored the order and proceeded down the West Hall that Weirich used the chemical spray. There is no evidence that Weirich punched,

---

[20] Where a use of force is needed, an unreasonable degree of force alone does not establish that the force was malicious and sadistic for Eighth Amendment purposes. *See McBride v. Rivers*, 170 F. App'x 648, 657 (11th Cir. 2006).

kicked, or used a baton on the plaintiff, and no evidence that Weirich had any further involvement after radioing for assistance. (Doc. 48-14 at 2). Furthermore, there is no evidence that the use of chemical spray on the plaintiff's back and head caused any serious or lasting injury. For these reasons, Officer Weirich is entitled to summary judgment.

However, a different result is reached with regard to Officers Aaron, Cunningham, Smith, and Jones. The plaintiff's sworn complaint alleges that while he was handcuffed he was thrown to the floor of the barbershop by Officer Aaron as the other correctional officers stood in a circle around them.[21] He alleges Aaron then attempted to choke him into unconsciousness while the other officers did nothing to intervene. Although denied by Officer Aaron, the plaintiff alleges he was offering no resistance at the time "and did not have any type of weapon." (Doc. 1 at 7).

Applying the *Hudson* standards to the facts regarding the events in the barbershop, it is clear that genuine issues of fact exist with respect to the plaintiff's Eighth Amendment excessive force claim against the above-named defendants. Based upon the allegations in the sworn complaint, the plaintiff presented little or no threat and there was no need for the use of force against the plaintiff once he

---

[21] He also alleges Lieutenant Arthur and Sergeant Johnson "witnessed and heard Aaron's brutal and vicious assault." (Doc 1 at 7). However, he fails to support this general contention with any specific facts. Furthermore, as mentioned above, he acknowledges the alleged attack ceased because of Arthur's and Johnson's intervention.

was handcuffed and taken to the barbershop, much less to the extent alleged. Based upon the record as presently presented, it seems clear that a reasonable jury could find that force was applied by Officer Aaron for reasons other than a good faith effort to maintain discipline. Furthermore, the plaintiff has alleged he suffered a bruised back, sore hands and redness around his neck and throat. (Doc. 1 at 7). These assertions are corroborated by subsequent medical records which show that the plaintiff complained of lower back pain following the incident. (Doc. 37-3 at 50-56). At the very least, genuine issues of fact exist with respect to the four *Hudson* elements described above. The defendants' statements to the contrary simply create an issue of fact to be decided at trial.

Although the other officers listed above are not alleged to have taken part in the force used against the plaintiff in the barbershop, it is alleged they failed to intervene to prevent the excessive force. Prison guards may become directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence. *Ensley v. Soper,* 142 F.3d 1402, 1407 (11th Cir. 1998). In this instance, a genuine issue of fact exists with regard to whether the officers were in a position to prevent a constitutional violation by a fellow officer, but failed to do so. The plaintiff alleges facts which suggest that not only did the officers fail to intervene, but they made efforts to hide Aaron's activities.

19

Also with regard to his excessive force claim, the plaintiff also alleges that defendants Price and Specks failed to "curb the known pattern of abuse of inmates by defendants Weirich and Aaron." (Doc. 1 at 10). However, the plaintiff's conclusory statements do state plead sufficient facts to state a claim against these defendants. "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." *Braddy v. Florida Dep't of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir.1998). Although a history of widespread abuse by a subordinate may be enough to put a supervisor on notice sufficiently to establish §1983 liability for the subordinate's actions, those abuses must be "obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." *Id.* at 802 (citing *Brown v. Crawford* 906 F.2d 667, 671 (11th Cir. 1990)). The plaintiff has not pled sufficient facts to meet this standard.

**Due Process:**

The plaintiff's due process claim against defendants Speck and Baldwin is also due to be dismissed. He contends their failure to intervene in the disciplinary proceedings against him resulted in his failure to adequately prepare for the hearing. However, with regard to prison disciplinary hearings, there are no due process requirements where the penalty imposed does not result in a "dramatic departure" from the ordinary conditions on incarceration. *Sandin v. Conner*, 515

U.S. 472 (1995). In *Sandin*, a prisoner sued prison officials under § 1983 alleging that he had been denied due process of law before being confined to disciplinary segregation for thirty days. The Supreme Court concluded in *Sandin* that segregation as a form of punishment was not a dramatic departure from the ordinary conditions on incarceration and, as such, did not amount to a grievous loss of a "substantive" interest protected by the Due Process Clause. Unlike the loss of good-time credit at issue in *Wolff v. McDonnell*, 418 U.S. 539 (1974), mere disciplinary segregation is the type of punishment an incarcerated individual should expect, and one that is ordinarily not a major change in his living conditions. Therefore, under the authority of *Sandin*, prisoners are not entitled to due process protection in proceedings wherein the disciplinary punishment does not result in a dramatic departure from the ordinary conditions of prison life.

In this instance, the plaintiff does not describe the specific punishment he received. However, the defendants present documentation which shows he received a loss of canteen, telephone, and visiting privileges for thirty days, and sentenced to disciplinary segregation for fifteen days. (Doc. 48-4 at 7). These are not the types of punishment which would mandate due process considerations under *Sandin*.

## V. Recommendation

For the reasons stated above, the undersigned RECOMMENDS the motions for summary judgment (doc's. 37 and 54) on behalf of the defendants be **GRANTED**, except as to the excessive force/failure to intervene claims, and corresponding state assault and battery claim, against defendants Samuel Aaron; Rickey Cunningham; Thaddeus Smith; and Cameron Jones.  It is therefore RECOMMENDED that defendants Michael Weirich; Cedrick Specks; Cheryl Price; Jeffery Baldwin; Deaundra L. Johnson; John Arthur; Patricia McGrue; Cathy Ford; and Corizon, LLC be **DISMISSED WITH PREJUDICE** from this action.  It is further RECOMMENDED that the excessive force/failure to intervene claims, and corresponding state assault and battery claim, against defendants Samuel Aaron; Rickey Cunningham; Thaddeus Smith; and Cameron Jones be referred to the undersigned for further proceedings.

## VI. Notice of Right to Object

Any party may file specific written objections to this report and recommendation.  Any objections must be filed with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objection. Failure to object to factual findings will bar later review of those findings, except

for plain error.   *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013).   Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address. Objections should not contain new allegations, present additional evidence, or repeat legal arguments.   An objecting party must serve a copy of its objections on each other party to this action.

Upon receipt of objections, a United States District Judge will make a *de novo* determination of those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the findings of fact and recommendations made by the magistrate judge.   The district judge must conduct a hearing if required by law.   Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence.   Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record.   The district judge also may refer this action back to the magistrate judge with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.   A party may only appeal from a final judgment entered by a district judge.

**DATED** this 20th day of September, 2016.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge